**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

JUN 10 2020

FOR THE NINTH CIRCUIT

ROBERT R. DORR,

                Petitioner-Appellant,

   v.

EARL L. HAUSER,

                Respondent-Appellee.

No.   19-35498

D.C. No. 3:18-cv-00039-JKS

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Alaska
James K. Singleton, District Judge, Presiding

Submitted June 4, 2020[**]
Anchorage, Alaska

Before: GOULD, WATFORD, and BADE, Circuit Judges.

Robert Dorr appeals from the district court's order denying his federal

petition for a writ of habeas corpus. We affirm.

**1.** As a factual matter, the Alaska Court of Appeals reasonably determined

that Dorr was lucid, alert as to space and time, and aware that he was speaking

---

[*]      This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

with police officers. The transcripts and audio recordings of the interviews reveal that Dorr appears to have understood the questions he was asked and coherently responded to them.

The state court reasonably rejected the conclusion offered by Dorr's medical expert, Dr. Woods, that Dorr was suffering from delirium when he spoke with the officers. At an evidentiary hearing, Dr. Woods explained that, in general, the pain and anxiety medications given to Dorr loosened his inhibitions, leaving him unable to refrain from speaking freely. Dr. Woods highlighted specific examples of Dorr's responses that, in his view, indicated delirium. But the Alaska court provided reasonable alternative explanations for many of those responses. For instance, when asked what happened when Dorr and his wife "drove up to the little supermarket there on Spenard and Wisconsin yesterday morning at about 5:00," Dorr responded, "Went to where?" Whereas Dr. Woods concluded that this response showed cognitive difficulty processing information, the court found that the question simply could have been confusing—after all, by "supermarket," the officer was referring to a gas station convenience store. Accordingly, we conclude that the Alaska court's decision was not based on an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d)(2).

**2.** As a legal matter, the Alaska court's holding that Dorr's statements were voluntary was not contrary to clearly established federal law, as determined by the

Supreme Court of the United States. 28 U.S.C. § 2254(d)(1). The closest on-point Supreme Court case, *Mincey v. Arizona*, 437 U.S. 385 (1978), is readily distinguishable. In *Mincey*, a police officer interviewed the defendant while he was hospitalized after having been injured during a shootout with other officers. *Id.* at 396. Mincey, encumbered by tubes, needles, and a breathing apparatus, could answer the officer's questions only by writing his answers down on a piece of paper. *Id.* Mincey repeatedly asked the officer to stop interrogating him until he could obtain counsel, yet the officer continued questioning him for four hours. *Id.* at 396, 399–400. Mincey was in unbearable pain, his responses to many questions were incoherent, he repeatedly lost consciousness during the interview, and he incorrectly believed that he was being questioned by several officers rather than just one. *Id.* at 398–401, 399 n.15. Conversely, here, Dorr was initially interviewed for only about 40 minutes, he did not ask the officers to leave, and he was coherent. When Dorr invoked his right to counsel during the interview the next day, the officers left. The Alaska court's holding that Dorr's statements to police were voluntary was not contrary to or an unreasonable application of *Mincey*.

3. Even if the state court erred in admitting Dorr's statements at trial, any such error was harmless. Dorr argues that he would not have testified and subjected himself to a difficult cross-examination had prosecutors not introduced

his statements at trial. But given the volume of undisputed evidence establishing that Dorr shot and killed his wife—including testimony from multiple eyewitnesses—Dorr's defense that he acted in the heat of passion during the shooting all but required him to testify. When Dorr did take the stand, his testimony was, in relevant part, consistent with his statements to law enforcement—that he did not intend to kill his wife, but rather shot her in a moment of panic. On these facts, we cannot say that the introduction of Dorr's statements at trial had a substantial and injurious effect or influence in determining the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993).

**AFFIRMED.**